138 So.2d 683 (1962)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS, Plaintiff and Appellant,
v.
Mrs. Mary E. GANI et al., Defendants and Appellees.
No. 511.
Court of Appeal of Louisiana, Third Circuit.
March 8, 1962.
Rehearing Denied March 30, 1962.
Certiorari Denied April 30, 1962.
*684 D. Ross Banister, Glenn S. Darsey, Ben C. Norgress, Brunswig Sholars, Jesse S. Moore, Jr., by Ben C. Norgress, Baton Rouge, for plaintiff-appellant.
Russell T. Tritico, Lake Charles, for defendants-appellees.
C. Jerre Lloyd, New Orleans, curator ad hoc for absent defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This suit involves an expropriation for highway purposes under the provisions of LSA-R.S. 48:441 through 48:460, providing for expropriation by a declaration of taking. The lower court awarded $792 for the property taken and $5,421.08 as severance damages to defendant's remaining land, making a total of $6,213.08. From this judgment the plaintiff has appealed.
The sole issue on appeal is the award of severance damages in the sum of $5,421.08, representing the cost of moving an existing building 11 feet further back from the new right of way line in order to provide sufficient space for parking in front of the building. It is the contention of the defendants that before the taking they had more than sufficient space to park one tier of cars in front of their building, which was used as a bar and lounge, but that after the taking of 11 feet off the front of their land they would not have sufficient space left to safely park a tier of cars in front of the building. Defendants contend that they must therefore move their building 11 feet further back at a cost of $5,421.08, which amount they claim as severance damages.
Plaintiff contends that after the taking there will still be a sufficient area remaining in front of defendants' building to park one *685 tier of cars and that therefore there are no severance damages. Plaintiff contends further, that even if the court should find that after the taking, insufficient space will remain in front of the building for parking, no severance damages can be awarded in this case because defendants have failed in their burden of proving such damages with certainty, in that defendants have introduced no evidence to show any difference between the market value of their property before and after the taking.
The facts show that before the taking the defendants owned a rectangular piece of land fronting 59.73 feet on an existing state highway and running back therefrom between approximately parallel lines a distance of about 700 feet. On this property there is located a commercial building 24.8 feet in width by 50 feet in depth, of frame construction with a brick veneer front, which has been used for about 11 years by one of the defendants, Faris Gani, as a bar and lounge known as the Oasis Tavern. The building is built on piers with steps leading up to the front door and there is a concrete slab 5 feet in width across the entire front of the building. Mr. Shutts, a civil engineer, surveyed the property and testified for defendants that before the taking there was a distance of $28.6 feet between the front of this concrete slab and the existing highway right of way. In these proceedings the state has widened its right of way and taken an additional 11 feet off the front of defendants' land, thereby leaving only 17.6 feet between said concrete slab and the new right of way line, according to the computations of Mr. Shutts. The plaintiff's witnesses, Mr. Pauley and Mr. Coleman, both of whom are realtors and not engineers, testified that according to their measurements there would be 18½ feet remaining between the said five foot concrete slab and the edge of the right of way after the taking and that this would be sufficient space for parking in front of defendants' building. These measurements by the plaintiff's witnesses were based to some extent on the location of a newly placed utility pole, the exact location of which, with reference to the new right of way line, these witnesses admitted they did not know. We, like the trial judge, are of the opinion that as to this conflict in the testimony we must accept the evidence given by the defendants' witness, Mr. Shutts, who is a civil engineer and surveyor. Accordingly, we find that after the taking there remained a distance of only 17.6 feet in front of defendants' building.
Mr. Shutts testified that a clearance of at least 18 feet 10 inches is necessary for parking one tier of cars. Even plaintiff's witnesses, Mr. Pauley and Mr. Coleman, admitted that 17.6 feet is an insufficient space for the safe parking of one tier of cars. Therefore, as a matter of fact, we find that as a result of the taking the defendants will no longer have a sufficient area in front of their tavern for the parking of a tier of cars.
Having reached this conclusion of fact, the next issue is whether the defendants are entitled to severance damages to their remaining land and, if so, the amount thereof. To prove severance damages, the only evidence introduced in the record by defendants was the testimony of Faris Gani and Mr. Shutts, the civil engineer, to show that after the taking insufficient space will remain in front of the building for parking, and the testimony of Mr. Victor Ticheloup, a general contractor, that it will cost $5,421.08 to move this building 11 feet back so as to give the defendants the same amount of parking space in front of their building that they had before the taking. Defendants introduced no evidence to show the fair market value of this property either before or after the taking. They simply contend that their building must be moved back 11 feet to give them the same parking space they had and that therefore they are entitled to the cost of moving the building this 11 feet.
Under the evidence in this case, it is our opinion defendants have failed in *686 their burden of proving the cost of moving this building is a reasonable and proper method of meeting the damage caused by the taking. Our jurisprudence is well settled that the severance damage allowable as a result of an expropriation is the difference between the market value of the property immediately before and immediately after the taking. State Through Department of Highways v. Central Realty Investment Co., 238 La. 965, 117 So.2d 261; Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260; Louisiana Highway Commission v. Ferguson, 176 La. 642, 146 So. 319. Under these authorities it is fundamental that severance damages to remaining land cannot be presumed and will not be awarded unless the owner shows by competent evidence that the value of his remaining land has been diminished by the taking. In most cases the best way to prove such diminution in value, and the amount thereof, is by the testimony of expert witnesses or by comparable sales to show that the remaining property is worth less after the taking than it was before. In the absence of such testimony, the court has great difficulty in determining whether any severance damages should be allowed. Furthermore, under the above authorities, it is clear that the amount of severance damages should not exceed the difference between the fair market value of the property immediately before and the fair market value of the remainder immediately after the taking, and therefore it is highly desirable that the proof show the amount of such difference, if any.
The plaintiff's witnesses pointed out, and defendants do not deny, that defendants' remaining land is 59.74 feet in frontage by approximately 689 feet in depth and the existing building, 24.8 feet in width by 50 feet in depth, is located on this piece of land in such a manner as to leave ample room (about 23 feet according to the plats filed in evidence) between the north side of the building and the north side of defendants' tract of land for the passage of vehicles. We note also that according to the plats filed in evidence there would be approximately 12 feet remaining between the south side of the building and defendants' south boundary line. This should be adequate space for the passage of automobiles on this side of this building. It is approximately 500 feet from the rear of defendants' building to the rear property line, which could afford adequate parking in the rear with easy access thereto. This indicates that the property will still be usable for commercial purposes, even though all parking in front has been eliminated. We do not intend to hold that the loss of front parking might not substantially decrease the market value after the taking, but the possibility of parking in the rear might be a factor in determining the amount of diminution in market value caused by the taking.
In the instant case the defendants ask the court to award them the sum of $5,421.08 to move the building without showing that this is not in excess of the actual diminution in market value of the property before and after the taking. Defendants have not shown the value of the building nor the value of the entire property nor any other facts from which the court can determine whether the cost of moving the building is a reasonable and proper method of meeting the damage caused by the taking. The burden is clearly on the defendants to prove their severance damage with reasonable certainty. See State Through Department of Highways v. Central Realty Investment Co., supra, and the authorities cited therein.
Although counsel have not raised the point, we deem it appropriate to state that we do not find our conclusion herein to be in conflict with our recent decision in Texas Gas Transmission Corporation v. Fuselier, La.App., 133 So.2d 828, in which writ of certiorari has been denied by the Supreme Court. In that case, the plaintiff expropriated a 50 foot right of way for its 30 inch pipeline across defendant's 29 acre rice field. The highest and best use of defendant's land was found to be for rice farming, for which it had a value of $250 *687 per acre, exclusive of the minerals. Although there was no expert testimony to show the exact amount of diminution in market value caused by the taking, the evidence showed clearly that defendant could not continue to use the property for its highest and best use, which was rice farming, unless the entire 29 acre rice field was releveled after the taking at a cost of $10 per acre. Since the value of the land was shown to be $250 per acre and the cost of releveling it, so that it could retain this use, was only $10 per acre, the court concluded that this was a reasonable and proper method of meeting the damage caused by the taking and held as follows:
"`Sec. 269. Expense Necessary to Make Remaining Land Usable. When part of an owner's property is taken for a public use, the owner may be damaged from inability to make the most advantageous use of the remaining land without additional expense. The cost of restoring the remaining land to a condition that will make it available for use, if a reasonable and proper method of meeting the damage caused by the taking, is a proper element to consider. Of course, there can be no double recovery for an item of expense. So, where the cost of restoring a building to its former state has been covered by an allowance for the reduced value of the building, there can be no separate allowance for items expended in the restoration.'
"Applying the above statement of law to the facts of the instant case, we find that defendant will be damaged from his inability to continue to use the remaining portion of his 29 acre field for its most advantageous use, which is rice farming, without going to the additional expense of releveling the entire field. The cost and method of releveling appears to be entirely reasonable, and, of course, there is no double recovery for this item of expense as it has not also been allowed in any diminution in market value of the farm. We therefore conclude that defendant is entitled to an award of $290 for the cost of releveling his 29 acre rice field."
The instant case is easily distinguishable from Texas Gas Transmission Corporation v. Fuselier, supra, in that here we have no basis upon which to determine whether the relatively great expense of moving this building 11 feet to the rear is a reasonable and proper method of meeting the damage caused by the taking.
However, the record does show that defendants have suffered some severance damages. Even plaintiff's own expert appraisers, Mr. Pauley and Mr. Coleman, stated that had they realized that as a result of the taking insufficient parking space would be left in front of the building, they would have estimated some severance damage to the remaining property. Therefore, in the interest of justice, we have decided to remand these proceedings for the introduction of additional evidence by defendants and plaintiff as to the amount of severance damages, in accordance with the views expressed herein.
For the reasons assigned, the judgment appealed from is affirmed insofar as it awards the sum of $792 for the property taken. Said judgment is annulled and set aside insofar as it awards $5,421.08 for severance damages and this case is remanded to the lower court for further proceedings in accordance with the views expressed herein. The assessment of costs, both in the lower court and on appeal, will await final determination of this case.
Affirmed in part, reversed in part, and remanded.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE and SAVOY, JJ., are of the opinion that a rehearing should be granted.