TATE, Judge
(concurring).
As organ for the court, the writer yields to the majority consensus that additional severance damages should be disallowed, since noncompensable as essentially resulting from the diversion of traffic.
However, it should be pointed out that this property owner suffers a sort of damage peculiarly different and substantially greater than other tracts affected by the taking: The taking cuts across the rear of his property and causes his service station and café to be adjacent to the new highway taken — but to be so situated that only the rear of these improvements faces the new highway. The improvements are now so situated as to detract from the value of the land; a purchaser would probably pay more for vacant property next to the site, *766 where he would not have the expense of relocating or tearing down depreciated improvements.
Alternatively, the landowners seek compensation for this severance damage sustained by their property. They rely upon the testimony of their appraiser that the service station improvements sustained a depreciation in value because, after the taking, only their rear will face the main highway. In the absence of comparable sales, the appraiser based this estimate upon his general appreciation of values, founded upon his wide experience. See State, Through Department of Highways v. Gilien, La.App. 3d Cir., 184 So.2d 737.
The Department, however, argues that this sort of damage cannot be compensated. It points out that the state has the right to change highway locations without being responsible in damages to those fronting on the former highway. As the decisions cited in the majority opinion show, this is in general a fair statement of the general rule that traffic diversion and highway relocation damages are damnum absque injuria (a loss which does not give rise to an action for damages).
In its latest decision on the question, the Supreme Court pointed out that one reason such damages are not allowed is that they are common to all of the property owners within the same vicinity. Cerniglia v. City of New Orleans, 234 La. 730, 101 So.2d 218. They are thus one of the “particular sacrifices which society has the right to inflict for the public good.” Sholars v. Louisiana Highway Commission, La.App. 2d Cir., 6 So.2d 153, 156.
Nevertheless, Cerniglia holds that a property owner may recover damages if harmed by a taking because of circumstances peculiar to his property in connection with the change of highway traffic flow.
I think this exception should be applicable to the present circumstances. The rear of the service station-café facilities now faces the new highway, the rear (southwest) corner of them just 38 feet from it. The improvements face the former roadbed only, upon which little future traffic may be expected.
The effect of the taking is to cause the improvements, as now situated in relation to the highway, to detract from the value of the site.[1] That is, the value of the remaining land itself as a service station site might be just as great before as after the taking; but the purchaser would have to take into consideration that the present facilities could not be so utilized without great expense to restore convenient access to pump facilities (now in the rear of the property).
The Department argues that essentially this loss in value results in the relocation of the highway. The Department ably points out that this sort of damage could not be allowed if the main highway had been relocated a mile away.
Nevertheless, in my view, the damages in question directly resulted from the taking of the rear portion of the service station site as a consequence of the present property’s peculiar location and attributes. For instance, as noted, an adjacent service station site without any improvements on it would not suffer this sort of damage from the taking.
In Cerniglia, the loss in value, due to the peculiar location of the property, was the destruction of an easy vehicle approach to the landowners’ drug store property because of a lowered one-way thoroughfare, even though traffic could still reach it. *767 See 101 So.2d 220. The Supreme Court disallowed those damages sought which resulted solely from the diversion of traffic, but it did affirm the trial court’s award of $3,000 severance compensation for the other damages sustained by the plaintiff’s property as a result of its peculiar location. 101 So.2d 221. (This figure appears to have been based upon the trial court’s estimate that this portion of the damages sought resulted from compensable items.)
Again, in cases such as State, Through Department of Highways v. Johnson, La. App. 3d Cir., 168 So.2d 389, severance damages were allowed for service station property where the width was substantially reduced and the value of the commercial buildings was substantially diminished because of the close proximity to the highway caused by the taking. In State, Through Department of Highways v. Randolph, La.App. 3d Cir., 170 So.2d 397, service station property was held substantially diminished in value, where front parking space was destroyed through the taking. The other decisions relied upon by the landowners, above cited, are to similar effect.
I am not really able to see why, if these damages are regarded as compensable where property is partially taken, the present reduction in market value should not also be allowed insofar as resulting from the loss due to the now commercially peculiar location of the improvements. Most of the cases relied upon by the Department concern instances where none of the property was taken, but nevertheless damages were sought for traffic diversion, etc. Here, however, the taking caused the remainder damages peculiar to itself and not shared by others in the vicinity since, by reason of the partial taking, its facilities are now so peculiarly located as to suffer a substantial depreciation in value.
The landowners’ expert estimated that the improvements suffered a loss of value of 20%, because they were now “denied the full complementary utility of the remainder of the site.” Tr. 239. By this, I take it he meant that they faced the wrong way for the best use of the property. This expert estimated the net value of the improvements at $37,700. However, the two state appraisers estimated this value as $24,500, Tr. 114, 136.
It seems to me that under Cerniglia the landowner is entitled to additional severance damages of $4,900 (20% of $24,500) sustained by his property as a result of the peculiar effect upon it caused by its partial taking, resulting in its improvements being substantially lessened in value since now peculiarly situated upon the remainder left by the taking. See also 5 Nichols, Eminent Domain, Section 16.01(5), p. 11 (3d ed. 1962).
I defer, however, to the consensus of the opinion of a majority of our court that this sort of damage is not compensable, however undoubted and Cerniglia to the contrary, because of the general traffic-diversion doctrine.

. The landowners produce evidence that it would cost almost $42,000 to alter the present service station-cafe buildings so as to face the new highway. However, these estimates also amounted to enlarging the facilities and so are not completely indicative.